IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Crim. No. 1:16-cr-209** |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ANDREW MANGANAS** | : | **Judge Sylvia H. Rambo** |

## M E M O R A N D U M

Before the court is the Expedited Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(A)(1) (Doc. 95) filed by Defendant Andrew Manganas ("Defendant" or "Mr. Manganas"). For the reasons outlined below, the court will deny the motion.

## I.     BACKGROUND

On March 20, 2019, Mr. Manganas pled guilty to three offenses: (1) theft or embezzlement from an employee benefit plan; (2) wire fraud; and (3) knowing discharge of pollutants into a navigable water of the United States without a permit. The underlying factual basis for these charges was that Mr. Manganas divested hundreds of thousands of dollars from his employees' wages and benefits, defrauded the state of Pennsylvania to artificially amplify his payment for services rendered, and discharged paint pollution into the Susquehanna River. Of note, Mr. Manganas was vice president of his father's paint company when it was twice penalized for similar environmental offenses.

1

In addition to intentionally committing a series of selfish acts that required Mr. Manganas's calculating deliberations, Mr. Manganas attempted to obstruct the government's investigation of the matter. One of Mr. Manganas's employees, Bryan Whitlock, was subpoenaed to testify to a grand jury. When Mr. Manganas found out, he instructed Mr. Whitlock to disregard the subpoena and refuse to appear for testimony. After Mr. Whitlock was arrested and compelled to testify before the grand jury, he lied under oath, apparently at Mr. Manganas's direction. Further, when the government was attempting to flesh out the amount of money Mr. Manganas had squandered during the commission of his offenses, Mr. Manganas repeatedly refused to provide financial documentation, despite the government repeatedly requesting it and the court directly ordering him to turn it over. When the government sent Mr. Manganas a form asking him how he intended to prevent similar offensive conduct from occurring in the future, Mr. Manganas declined to provide any response.

The aggregate maximum statutory sentence for the offenses Mr. Manganas pled guilty to is twenty-eight years in prison plus a $28,370,000 fine. The court ultimately entered a sentence of forty-six months imprisonment, to be served concurrently, along with two years of supervised release and a fine in the amount of $20,000. While the court did not order restitution as part of Mr. Manganas's sentencing, this was because Mr. Manganas settled with the employees as part of a

civil lawsuit.  On September 19, 2019, Mr. Manganas submitted to prison.  As of today, Mr. Manganas has served seven-and-a-half of his forty-six sentenced months in prison, leaving approximately eighty-five percent of his sentence unserved.

On April 14, 2020, Mr. Manganas filed his Expedited Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(A)(1).  (Doc. 95.)  In it, he argued that he is suffering from significant underlying health conditions that constitute COVID-19 comorbidities, and that this constitutes an extraordinary and compelling situation justifying his release to home confinement for the remainder of his sentence.  The government has filed two responses, Defendant has filed a reply brief, and the government has filed a sur-reply.  The matter is thus ripe for review.

## II.   **DISCUSSION**

Under 18 U.S.C. § 3582(c)(1)(A):

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that . . . Extraordinary and compelling reasons warrant such a reduction.

Under 18 U.S.C. § 3553(a), the court is to consider multiple factors in deciding on a defendant's proper sentence, including, *inter alia*: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for

the sentence imposed . . . to protect the public from further crimes of the defendant";
(3) "the need for the sentence imposed . . . to afford adequate deterrence to criminal
conduct"; and (4) "the need for the sentence imposed . . . to" offer rehabilitative
services to the defendant.

Here, Defendant has put forth a colorable argument that the combination of
the COVID-19 pandemic and his underlying health conditions constitute an
extraordinary and compelling circumstance that supports the court sentencing him
to home confinement. Nonetheless, because the court finds the section 3553(a)
factors weigh heavily against releasing Mr. Manganas to home confinement, the
court shall deny his motion.

In deciding the matter before the court, the interests of the individual
defendant need be weighed against the interests of society in general. Here, Mr.
Manganas's concerns are understandable. A prison, even under the best of
circumstances, is not a prime place for anyone to be during a pandemic, much less
an individual suffering from Mr. Manganas's health conditions. The facility does
not have a method for promoting social distancing. It is designed to regulate the
individuals, provide them with their basic needs, and efficiently do so by relying
heavily upon group settings. As a result, if a single individual were to bring COVID-
19 into Mr. Manganas's facility, there is a substantial chance he would contract it
and suffer severe health consequences.

That being said, the interests in favor of society here militate heavily in favor of keeping Mr. Manganas imprisoned.  Mr. Manganas committed a series of crimes that were largely a product of a deplorable, selfish, and fraudulent scheme.  He took advantage of his position of power to bilk hundreds of thousands of dollars from the employees who relied upon him to provide their wages and benefits and from the tax payers who paid his company.  He also committed an environmental offense of the same kind he twice committed as the vice president of his father's paint company. While Mr. Manganas's offenses did not involve direct physical violence, he very well may have deprived everyday workers of wages and benefits they could have relied upon in providing their families with essentials.  As a result, the nature and circumstances of Mr. Manganas's offense suggests he was not the victim of a bad decision that can be imputed to a bad situation—he victimized people that trusted and relied upon him for the sole, petty sake of making a few extra bucks.

The fact the court finds most significant here is Mr. Manganas's active efforts to avoid taking any responsibility for his crimes.  After being accused of these offenses, Mr. Manganas again preyed on his employees by dragging one into his criminal efforts by hiding facts from the government.  Mr. Manganas repeatedly refused to cooperate with the government and refused a court order to turn over full financial documentation.  These facts demonstrate that Mr. Manganas is a man who has learned little from his offenses.  He needs more time in prison to learn his lesson,

and he needs further imprisonment to protect the public from his ability to commit further criminal activity. Mr. Manganas's early release to home confinement at a time when he has only served roughly sixteen percent of his sentence places the public at a substantial risk. While the court is sympathetic to Mr. Manganas's plight, the risk to society of his release is greater.

### III.   <u>CONCLUSION</u>

For the reasons outlined above, the court will deny Defendant's motion for a reduction in his sentence. An appropriate order shall follow.

*/s/ Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge

Date: May 12, 2020