IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 1:16-CR-209 |
| vs. | : | |
| ANDREW MANGANAS, | : | |
| Defendant. | : | Judge Sylvia H. Rambo |

# MEMORANDUM

Before the court is Defendant Andrew Manganas's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 based on ineffective assistance of counsel. (Doc. 116.) For the reasons set forth below, the motion will be denied.

## I.   BACKGROUND

In July 2016, a grand jury returned a 46-count indictment charging Andrew Manganas and Panthera Painting, Inc. with theft from an employee benefit plan, mail fraud, and violations of the Clean Water Act violations that arose from the discharge of pollutants into the Susquehanna River. (Doc. 1.) Panthera was solely owned by Manganas, who served as the company's President, Vice President, Secretary, and Treasurer. Manganas and Panthera were represented by Attorney Steven Spallings, who was paid a retainer with Panthera funds. (Doc. 135, at 45:7-12, 47:22-24.)

In July 2018, after having initially entered a plea of not guilty, Manganas and Panthera signed a joint plea agreement pleading guilty to five identical counts of

1

theft from an employee benefit plan, mail fraud, and violations of the Clean Water Act. (Docs. 39, 44.) Manganas subsequently executed, on behalf of himself and Pantera, a "Statements of Defendants" that set forth the evidence supporting the plea. (Doc. 41.) Manganas also executed a corporate resolution affirming his authority to act on behalf of and enter a plea for Pantera. (Doc. 47.) In August 2019, the court sentenced Panthera to five years' probation and Manganas to 46 months' imprisonment and two years of supervised release. (Doc. 86.)

Manganas has filed a motion under § 2255 for ineffective assistance of counsel. (Doc. 116.) The motion argues that Stallings provided ineffective representation based on (1) his failure to demand a hearing under Rule 44(c)(2) or counsel Manganas on his right to a hearing, and (2) his failure to file a notice of appeal after being instructed to do so by Manganas.[1] The court held an evidentiary hearing on the motion in which it heard testimony from Manganas, Manganas's son, and Stallings. The matter is thus ripe for disposition.

## II.    STANDARD OF REVIEW

The Sixth Amendment entitles a defendant to counsel that will provide all services necessary "to ensure that the trial is fair." *Strickland v. Washington*, 466

---

[1] Manganas's initial motion made additional claims that he never addressed in his briefs, including that Stallings provided ineffective assistance based on his representation of another individual who allegedly cooperated with the government against Manganas as well as Stallings' failure to contest certain Sentencing Guidelines issues at the sentencing hearing. Given the absence of any substantive argument on these claims, they are abandoned and need not be addressed.

U.S. 668, 685 (1984). Under 28 U.S.C. § 2255, a prisoner in custody claiming the right to be released based upon the ground that the sentence was imposed in violation of the Constitution or law may move the sentencing court to vacate, set aside, or correct the sentence. The defendant must show that counsel's performance was constitutionally deficient and that the deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687.

In *Strickland*, the United States Supreme Court explained the proper method for analyzing each factor. First, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. It is easy through hindsight to unfairly scrutinize counsel's strategic and tactical decisions "after conviction or [an] adverse sentence"; to avoid this, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Second, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability is" less than a preponderance of the evidence; it is "a probability sufficient to undermine confidence in the outcome." *Id.*

### III. DISCUSSION

Manganas's first argument is that Stallings was ineffective because he did not object to the court's failure to conduct a Rule 44(c) inquiry and did not explain to Manganas that he had a right to such an inquiry. Under Rule 44(c)(2), the court "must promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation." While it is undisputed that the court did not conduct an inquiry under Rule 44(c)(2), Manganas is not entitled to relief because he has not shown that an actual conflict existed or that he was prejudiced by Stallings' performance in any way.[2]

Manganas's written submissions and testimony make no suggestion that an actual conflict ever existed with Panthera, and nothing in the record supports that Manganas's interests diverged from those of the company with respect to a material fact, legal issue or course of action. Manganas held every officer position and was the sole corporate representative of Panthera, which had no independent board of

---

[2] Manganas's initial motion claimed that Stallings' joint representation in and of itself violated his Sixth Amendment rights, but his supporting brief set forth no substantive argument on the issue, and his reply brief filed after the evidentiary hearing addressed joint representation only as it relates to Stallings' failure to demand a Rule 44 hearing or counsel Manganas on his right to a hearing. Regardless, any such claim would fail because joint representation "is not per se violative of constitutional guarantees of effective assistance of counsel." *Holloway v. Arkansas*, 435 U.S. 475, 482 (1978); *see Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980) ("In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his counsel's performance.").

directors, and all legal decisions involving the company thus required the involvement and consent of Manganas alone. (Doc. 135, 65:25-66:4.) There is no indication that Stallings took any action on behalf of Panthera to the detriment of Manganas or that Stallings' representation foreclosed or inhibited a plausible alternative defense strategy. Stallings' sentencing memorandum advanced the sole interests of Manganas, and Stallings testified at the evidentiary hearing that he did not believe a conflict or potential conflict ever arose. (*Id*. at 49:2-5) ("There were never any points in the case or in the investigation leading to the case when it appeared that there was any divergence of interests between Mr. Manganas and the company."); (*id.* at 63:11-13) ("There was, to my knowledge, no potential for conflict between representing Panthera Painting and representing Andrew Manganas individually.").

In addition, there is nothing to support Manganas's claim that he was left in the dark as to the nature of Stallings' representation. Manganas's testimony that he retained Stallings to serve only as his personal counsel is contradicted by the record. Manganas paid Stallings with Panthera funds (*id.* at 12:2-9) and at no point did he hire a separate attorney for Panthera (*id.* at 11:22-25). Manganas also had a history of sharing the same attorney as Panthera in other cases, despite denying he ever did so under oath. (*Id*. at 23:16-24:25.) *See I.U.P.A.T. District Council #57 Combined Funds et al v. Panthera Painting, Inc. et al*., No. 2:09-CV-01382, Doc. 57 (Western

District of Pennsylvania); *International Painters and Allied Trades Industry Pension Fund et al., v. Panthera Painting, Inc. et al.*, No. 2:11-CV-337, Docs. 19, 25 (Western District of Pennsylvania); *I.U.P.A.T. District Council #57 Welfare, Annuity, Apprenticeship and Labor Management v. Panthera Painting, Inc. et al.*, No. 13-CV-364, Doc 11 (Western District of Pennsylvania). In addition, Stallings testified at the evidentiary hearing that he was retained to represent both Manganas and Panthera and that he discussed representing both parties with Manganas. (Doc. 135, 47:10-48:2.) During the course of Stallings' representation, he entered numerous appearances on both parties' behalf and with Manganas's full awareness. At the change of plea hearing, for example, the court advised Manganas that he would be answering questions not only for himself but also Panthera, and Manganas advised the court that he wished to enter a guilty plea on behalf of the company. (Doc. 91, 5:19-21, 24:13-16.) Stallings also made clear at sentencing, while standing next to Manganas, that he was there to "represent not only Mr. Manganas but Panthera Painting, and I am here on both of their behalf today." (Doc. 89, 3-11.)

In the absence of an actual conflict or prejudice, Manganas is not entitled to relief based on Stallings' failure to demand a Rule 44 hearing or counsel Manganas that he had a right to the hearing. Holding otherwise would effectively vitiate Third Circuit precedent that a district court's failure to advise a defendant about his right to separate counsel under Rule 44(c) does not justify reversal of a conviction absent

6

an actual conflict of interest. *United States v. Pungitore*, 910 F.2d 1084, 1140-41 (3d Cir. 1990). Manganas's first claim based on ineffective assistance of counsel will therefore be denied.

Next, Manganas's motion claims that Stallings was ineffective for failing to file a notice of appeal on his behalf after sentencing. If a defendant explicitly instructs counsel to file an appeal, they must do so, and prejudice is presumed if they do not. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Garza v. Idaho*, 139 S. Ct. 738, 744 (2019). If no explicit instruction is given, counsel must consult with the defendant about filing a notice of appeal if there is reason to believe either "(1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe,* 528 U.S. at 480.

At the evidentiary hearing, the court heard somewhat conflicting testimony from the witnesses regarding two post-conviction meetings that were held to discuss an appeal. The first meeting was held immediately after sentencing in a room adjacent to the courtroom and involved Manganas and his family and Stallings. According to Manganas, he told Stallings in the meeting that he wanted to appeal, but Stallings responded by telling him that he waived his right to appeal. (Doc. 135, 6:22-7:4, 35:4-8.) Manganas's son also testified that Manganas said he wanted to appeal, but he testified that Stallings responded by saying that they would speak the

following day and would "get the transcript first and then go from there." (*Id.* at 36:22-24.) According to Stallings, the group had preliminary discussions in the meeting about the right and potential bases for appeal. Stallings reminded Manganas that he had signed a waiver of appeal and informed him that such waivers are generally enforced in the circuit such that the court of Court of Appeals would be unlikely to entertain certain arguments that are commonly the subject of appeals. (*Id.* at 52:16-53:1.) Stallings testified that he explained that other post-conviction remedies existed including a petition under Section 2255, and he suggested that they schedule a meeting to discuss the options in more detail. (*Id.* at 52:9-53:6.) According to Stallings, Manganas wanted to understand what his options were, but he made clear that he did not want an appeal filed at that time. (*Id.* at 60:17-25.)

The second meeting took place approximately ten days later in Stallings' office and involved Manganas and his children and Stallings. At the meeting, Stallings expressed his willingness to file an appeal, and the group discussed merits and potential bases for a filing. (*Id.* at 7:24-8:25, 37:6-22, 53:20-54:25.) Manganas testified that Stallings informed him that an appeal would cost another hundred thousand dollars, and Manganas responded he would have to think about it. (*Id.* at 7:24-8:25, 25:18-26:1.) Stallings testified that he was instructed not to file an appeal at the time. (*Id.* at 56:5-17.)

According to Manganas, following the meeting and one day prior to the expiration of his time to appeal, he tried calling Stallings in order to instruct him to file an appeal, but Stallings did not answer or return his call. (*Id*. at 8:16-25, 34:4-6.) Stallings testified that he continued to exchange text messages with Manganas's son following the meeting, but he never received any indication that Manganas wanted him to file an appeal, and he does not know of any occasion on which Manganas was unable to reach him about the issue. (*Id.* at 53:13-19, 56:10-24.)

Despite the conflicting testimony with respect to the first post-sentencing meeting, there is no dispute that the second and final meeting between Manganas and Stallings ended with an instruction that no appeal should be filed at that time, and that Manganas never subsequently instructed Stallings to the contrary. The testimony shows that Stallings consulted with Manganas and his family on multiple occasions and appropriately counseled Manganas as to the merits and potential bases for appeal. While Manganas may have initially demonstrated his interest in appealing, Stallings credibly testified that no final decision was ever made in the initial meeting, and the record is clear that Manganas walked back any desire to appeal in the second meeting. Moreover, the court credits Stallings' testimony that he had no reasonable basis for believing that Manganas wanted him to appeal after the conclusion of the second meeting. Stallings had been in contact with Manganas's son and received no such indication, and he was not aware of any attempts to contact

9

him at the eleventh hour before the expiration of Manganas's time to appeal. Because Manganas did not expressly instruct Stallings to file a notice of appeal or reasonably demonstrate his interest in doing so, Stallings did not provide ineffective assistance and relief under Section 2255 is not appropriate.

## IV. CONCLUSION

For the reasons set forth above, Defendant Andrew Manganas's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 based on ineffective assistance of counsel will be denied. An appropriate order shall follow.

<u>s/Sylvia H. Rambo</u><br>
Sylvia H. Rambo<br>
United States District Judge

Dated: September 3, 2021