IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 1:16-CR-00209 |
| | : | |
| v. | : | |
| | : | |
| ANDREW MANGANAS | : | Judge Sylvia H. Rambo |

## MEMORANDUM

Before the court is Defendant Andrew Manganas's motion for compassionate release. (Doc. 144.) For the reasons set forth below, the motion will be granted.

### I. BACKGROUND

In January 2018, Manganas pled guilty to one count of theft from an employee benefit plan, one count of mail fraud, and three counts of violating the Clean Water Act. (Docs. 39, 44.) The charges involved a federal contract for Manganas's company, Panthera Painting, to repaint the George Wade Bridge in Harrisburg, Pennsylvania. (Doc. 1.) As part of his guilty plea, Manganas admitted that (1) he and his company underreported Panthera employee hours in connection with the bridge project, allowing Manganas to avoid paying ERISA-covered funds for various employee contributions, and effectively converting the owed money to his own personal use; and (2) he and his company unlawfully discharged pollutants into the Susquehanna River during the completion of the project. (*See* Doc. 57, ¶¶ 19, 31–34.)

In August 2019, the court sentenced Manganas to 46 months of imprisonment and two years of supervised release. (Doc. 85.) The court applied a two-level

1

enhancement to Manganas's guideline range because it found that he directed a grand jury witness to give false testimony. (Doc. 89, pp. 53–54; Doc. 57, ¶¶ 35–36.)

In April 2020, Manganas filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on his medical conditions and the COVID-19 pandemic. (Doc. 95.) The court denied the motion, finding that the seriousness of the offense and the relatively brief period of incarceration served by Manganas at the time weighed against a reduction in sentence. (Doc. 112.)

In August 2021, Manganas filed a renewed motion for compassionate release, which the government opposes. The motion has been fully briefed and is ripe for review.

## II. STANDARD OF REVIEW

Under 18 U.S.C. § 3582(c)(1)(A), a defendant may move the sentencing court to reduce his or her term of imprisonment. To do so, the defendant must first request that the Bureau of Prisons file such a motion on his or her behalf, and may only move after he or she has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).

If the defendant complies with this exhaustion requirement, the court may reduce his or her term of imprisonment, after considering the factors set forth in 18 U.S.C. § 3553(a), if the court finds that extraordinary and compelling reasons warrant

enhancement to Manganas's guideline range because it found that he directed a grand jury witness to give false testimony. (Doc. 89, pp. 53–54; Doc. 57, ¶¶ 35–36.)

In April 2020, Manganas filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on his medical conditions and the COVID-19 pandemic. (Doc. 95.) The court denied the motion, finding that the seriousness of the offense and the relatively brief period of incarceration served by Manganas at the time weighed against a reduction in sentence. (Doc. 112.)

In August 2021, Manganas filed a renewed motion for compassionate release, which the government opposes. The motion has been fully briefed and is ripe for review.

## II. STANDARD OF REVIEW

Under 18 U.S.C. § 3582(c)(1)(A), a defendant may move the sentencing court to reduce his or her term of imprisonment. To do so, the defendant must first request that the Bureau of Prisons file such a motion on his or her behalf, and may only move after he or she has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).

If the defendant complies with this exhaustion requirement, the court may reduce his or her term of imprisonment, after considering the factors set forth in 18 U.S.C. § 3553(a), if the court finds that extraordinary and compelling reasons warrant

such a reduction and that the reduction is consistent with the applicable policy statements by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A)(i). Under the Sentencing Commission's relevant policy statement, the court must also find that the defendant is not a danger to the safety of any person or the community as provided in 18 U.S.C. § 3142(g). USSG § 1B1.13.2 Medical conditions that qualify as "extraordinary and compelling reasons" include:

> (1) suffering from a serious physical or medical condition,
>
> (2) suffering from a serious functional or cognitive impairment, or
>
> (3) experiencing deteriorating physical or mental health because of the aging process
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

USSG § 1B1.13, cmt. n.1(A)(ii).

The policy statement also contains a catchall provision setting forth that extraordinary and compelling circumstances may exist for a "reason other than, or in combination with" the aforementioned reasons. *Id.*, § 1B1.13, cmt. n.1(D). This catchall provision allows courts to assess whether extraordinary and compelling circumstances exist independent from those enumerated reasons set forth in the policy statement. *See United States v. Rodriguez*, 451 F. Supp. 3d 392, 397 (E.D. Pa. 2020) (collecting cases); *United States v. Lisi*, 440 F. Supp. 3d 246, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020); *United States v. Lavy*, No. 17-20033, 2020 WL 3218110,

at *3–4 (D. Kan. June 15, 2020) ("[A] growing consensus of courts across the country have concluded that, after the First Step Act, the Commission's policy statement 'does not constrain a court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A).'").

### III. DISCUSSION

As an initial matter, Manganas contends that he exhausted all administrative remedies because he did not have access to the Bureau of Prison's administrative remedy program prior to filing his motion. (Doc. 145, p. 1.) The government does not contest Manganas's assertion or otherwise argue that Manganas failed to properly exhaust his administrative remedies. As such, the exhaustion requirement is satisfied.

Manganas has also shown extraordinary and compelling circumstances that justify a reduction in sentence to time served based on his medical conditions and the COVID-19 pandemic. Manganas is 64 years old and suffers from serious medical conditions including chronic lymphocytic leukemia, a cancer of the blood and bone marrow. (*See* Doc. 100-2, p. 33.) The disease is potentially life-threatening and primarily affects lymphocytes or white blood cells that are critical to the body's ability to fight infections. Its symptoms include frequent infections in the upper and lower respiratory tracts, and it places patients at risk for developing other cancers and immune issues. Manganas also suffers from asthma and pulmonary emphysema, a chronic obstructive pulmonary disease that involves damage to the lung tissue and leads to airflow blockage and breathing problems. (*Id.* at pp. 2, 9, 11, 24, 33.)

Manganas's medical conditions, serious in their own right, also increase his risk of suffering complications from COVID-19, as the CDC unequivocally warns that cancer and cancer treatment, asthma, and pulmonary emphysema can increase the risk of severe illness and death from the virus.[1] *See* Centers for Disease Control and Prevention, COVID-19, People with Certain Medical Conditions, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Such risks are further amplified in a prison setting, which is ill-suited for social distancing. *See, e.g.*, *United States v. Pitt,* No. 1:97-CR-108-01, 2020 WL 4677251, at *2 (M.D. Pa. Aug. 12, 2020) (Rambo, J.); *Rodriguez,* 451 F. Supp. 3d at 394; *United States v. Somerville,* 463 F. Supp. 3d 585, 598 (W.D. Pa. 2020). Indeed, Manganas already contracted the virus once while incarcerated.[2] Though the infection occurred while Manganas was housed at a state institution, the facilities at his current place of incarceration have experienced severe outbreaks of the virus, resulting in 30 inmate deaths, 2 staff member deaths, 978 prior infections

---

[1] Manganas's elderly age also increases his risk of suffering severe illness from the virus and thus provides additional support for extraordinary and compelling circumstances. *See* Centers for Disease Control and Prevention, COVID-19 Risks and Vaccine Information for Older Adults, *available at* https://www.cdc.gov/aging/covid19/covid19-older-adults.html ("Older adults are more likely to get very sick from COVID-19. Getting very sick means that older adults with COVID-19 might need hospitalization, intensive care, or a ventilator to help them breathe, or they might even die. The risk increases for people in their 50s and increases in 60s, 70s, and 80s.").

[2] Manganas contracted and recovered from COVID-19 in the early part of this year. To the best of the court's knowledge, COVID-19 antibodies from a prior infection last for a period of at least three months, and though the science becomes murky from there, it is generally well-accepted that the virus and its variants thereafter present at least some minimal risk of re-infection. *See* Centers for Disease Control and Prevention, COVID-19, Reinfection with COVID-19, *available at* https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html.

among inmates, and 166 prior infections among staff members. Federal Bureau of Prisons, COVID-19 Coronavirus, *available at* https://www.bop.gov/coronavirus. Most recently, one staff member tested positive for the virus. For these reasons, the courts finds that Manganas's serious and chronic health conditions together with the COVID-19 pandemic provide strong support for finding extraordinary and compelling circumstances.

It is true, as the government argues, that the increased availability of the COVID-19 vaccination cuts against finding extraordinary and compelling circumstances based on the pandemic. But the record is far from clear as to whether Manganas has had an opportunity to become fully vaccinated to date. According to Manganas, he was not previously vaccinated because a nurse at his prior institution told him that he should not receive the vaccine until several months after his recovery from the virus. And while the government represents that Manganas will be eligible to receive the vaccine, it does so only generally, and without specifying when Manganas would actually be offered treatment or whether it would require more than one dose. Given these considerations, and mindful that the vaccine itself is not bullet proof and that Manganas's medical conditions are themselves life-threatening, Manganas has shown extraordinary and compelling circumstances notwithstanding the availability of the COVID-19 vaccination.

The Section 3553 factors also support reducing Manganas's sentence. Under 18 U.S.C. § 3553(a), the court considers multiple factors, including, among others,

(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to protect the public from further crimes of the defendant; (3) the need for the sentence imposed to afford adequate deterrence to criminal conduct; and (4) the need for the sentenced imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

The nature and circumstances of Manganas's offenses were serious and involved substantial dishonesty. His conduct was non-violent, however, and he has served approximately 26 months of imprisonment, more than half of his total sentence, to atone for his crime. Considering Manganas's lack of serious criminal history, the circumstances of his incarceration, and the restrictions that will be imposed upon release, his time served is sufficient to provide just punishment and adequate deterrence and promote respect for the rule of law.

Finally, Manganas does not pose a danger to the community and continued incarceration is not necessary to protect the public from further crimes. Manganas has no history of violence or particularly serious crime, and he appears to have exercised good behavior throughout the entirety of his incarceration. Manganas also has an especially robust support system on the outside, with the record reflecting a multitude of thoughtful letters from friends and family members attesting to Manganas's good character and promising to take responsibility for his re-integration into the

community. (*See* Doc. 100-3.) A special term of supervised release will further ensure that Manganas remains on the straight and narrow.

In sum, the totality of the record supports Manganas's compassionate release. The court will therefore reduce Manganas's sentence of incarceration to time served and order him to serve a special term of supervised release for the remainder of his sentence, in addition to the regular term of supervised release as initially imposed.

## IV. CONCLUSION

For the reasons set forth above, Defendant Andrew Manganas's motion for compassionate release will be granted. An appropriate order shall follow.

Dated: November 29, 2021

>                                       */s/ Sylvia H. Rambo*
>                                       Sylvia H. Rambo
>                                       United States District Judge